UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Timothy Charles Holmseth,                           Court File No. 14-cv-2970 (DWF/LIB)

　　　　　　Plaintiff,

v.                                                            **REPORT AND RECOMMENDATION**

City of East Grand Forks, et al.,

　　　　　　Defendants.

　　　　This matter comes before the undersigned United States Magistrate Judge upon Defendants City of East Grand Forks ("Defendant City"), James Richter, Michael Hedlund, David Murphy, Rodney Hajicek, and Aeisso Schrage's Motion to Dismiss and/or for Summary Judgment, [Docket No. 13]; Defendants Barb Erdman and Michael Norland's Motion to Dismiss, [Docket No. 23]; Defendant Ronald Galstad's Motion to Dismiss, [Docket No. 32], and Amended Motion to Dismiss and/or for Summary Judgment, [Docket No. 54]; Defendant Michael LaCoursiere's Motion to Dismiss, [Docket No. 61]; Plaintiff's Motion for Injunctive Relief, [Docket No. 72]; and Defendant Jeanette Ringuette's Motion to Dismiss and/or for Summary Judgment, [Docket No. 84]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  The Court held motions hearings on December 17, 2014 and February 11, 2015.

　　　　For the reasons discussed herein, the Court recommends that Defendants City, Richter, Hedlund, Murphy, Hajicek, and Schrage's Motion to Dismiss and/or for Summary Judgment, [Docket No. 13], be **GRANTED**; Defendants Erdman and Norland's Motion to Dismiss, [Docket No. 23], be **GRANTED**; Defendant Galstad's Amended Motion to Dismiss and/or for Summary Judgment, [Docket No. 54], be **GRANTED**; Defendant Galstad's Motion to Dismiss,

[Docket No. 32] be **DENIED** as moot; Defendant LaCoursiere's Motion to Dismiss, [Docket No. 61], be **GRANTED**; Plaintiff's Motion for Injunctive Relief, [Docket No. 72] be **DENIED**; and Defendant Ringuette's Motion to Dismiss and/or for Summary Judgment, [Docket No. 84], be **GRANTED**.

## I.    BACKGROUND

This 42 U.S.C. § 1983 case arises from three separate courses of events. The first course of events concerns the actions of members of the East Grand Forks Police Department ("EGFPD") while investigating complaints made about Plaintiff Timothy Holmseth ("Plaintiff") between 2009 and 2011 regarding postings he was publishing to the internet that ultimately resulted in a protective order being issued against Plaintiff in Florida. The second course of events concerns the actions of members of the EGFPD, members of the Polk County Sheriff's Department, and two attorneys during the 2011 and 2012 investigation and prosecution of Plaintiff for violations of the Florida protective order. The third course of events concerns a staff member of the East Grand Forks Economic Development and Housing Authority ("EDHA") being ordered to shred an address verification form required for Plaintiff to obtain security clearance to work for a company providing janitorial services to the National Weather Service ("NWS"), and complaints made about Plaintiff while so employed that ultimately resulted in his employment being terminated on July 11, 2014.

On July 22, 2014, Plaintiff submitted his initial pro se Complaint, [Docket No. 1], alleging that the named Defendants had conspired with non-party individuals and each other to violate a number of Plaintiff's constitutional rights. On September 10, 2014, Plaintiff filed an Amended Complaint, [Docket No. 11], that is the operative complaint.[1]

---

[1]It appears that when Plaintiff formatted his Amended Complaint, he inserted into the body of the Amended Complaint portions of the text of two letters that he may have intended to include as exhibits. (See Amended

On September 12, 2014, Defendants City, Richter, Hedlund, Murphy, Hajicek, and Schrage (collectively, the "City Defendants") filed their Motion to Dismiss and/or for Summary Judgment, [Docket No. 13]. On September 18, 2014, Defendants Erdman and Norland (collectively, the "County Defendants") filed their Motion to Dismiss, [Docket No. 23]. On September 24, 2014, Defendant Galstad filed a Motion to Dismiss, [Docket No. 32]. On October 14, 2014, Defendant Galstad filed an Amended Motion to Dismiss and/or for Summary Judgment, [Docket No. 54]. On October 21, 2014, Defendant LaCoursiere filed a Motion to Dismiss, [Docket No. 61]. As initially scheduled, oral arguments in the above-listed motions were to be heard on two separate dates. On October 30, 2014, the Court issued an Order consolidating the motions hearings regarding the four above-listed motions and rescheduling the single hearing for December 17, 2014. (Order, [Docket No. 71]).

On November 12, 2014, Plaintiff filed a Motion for Injunctive Relief, [Docket No. 72]. On November 17, 2014, the Court issued an order scheduling that motion to be heard at the motions hearing previously scheduled for December 17, 2014. (Order, [Docket No. 74]).

On December 3, 2014, Defendant Ringuette filed her Motion to Dismiss and/or for Summary Judgment, [Docket No. 84].

---

Complaint, [Docket No. 11], pp. 26-27). The inserted portion of the text of the first letter was to the Clerk of Court, asking that Plaintiff's Amended Complaint be accepted. (Id. at 27). It appears Clerk of Court concluded the text of that letter to be the end of Plaintiff's Amended Complaint and, as a result, docketed the Amended Complaint in two separate entries. The first portion of Plaintiff's Amended Complaint was docketed under the heading "Amended Complaint" and appears to end on page 26. (Id.). The second portion of the Amended Complaint, which contains additional allegations, his list of claims, and prayer for relief, appears beginning at page three and ending at page twelve of Exhibit A to the Amended Complaint. (See Id., Ex. A, pp. 3-12). This error in the form of the filing is immaterial to the Court's consideration of the motions at issue. When considering motions to dismiss for failure to state a claim, a court may consider the pleadings themselves, materials embraced by pleadings, exhibits attached to the pleadings, and matters of public record. Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011); see also Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) ("In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).

On February 11, 2015, while the motions heard at the December 17, 2014, hearing were still under advisement, the Court heard oral argument on Defendant Ringuette's motion. The Court stated orally on the record that it would address all of the above-listed motions in a single report and recommendation.

## II.     MOTION TO DISMISS STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)). "[T]he court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

As discussed above, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

## III.    FACTS COMMON TO THE MOTIONS TO DISMISS[2]

The overwhelming majority of the factual allegations in Plaintiff's Amended Complaint concern a Florida attorney named Kim Picazio and Picazio's associates, whom Plaintiff conclusorily alleges conspired together and with Defendants to threaten him and violate his civil rights. (See gen., Amended Complaint, [Docket No. 11]).  Neither Picazio nor her associates are parties to this case.

With regards to the named Defendants in this case, Plaintiff has alleged the following specific facts:[3]

---

[2]As discussed in more detail in the sections below, the Court recommends that all of the pending Rule 12 motions to dismiss be granted and does not reach the issue of whether the individual defendants who have moved for Rule 56 summary judgment are entitled to it.  Accordingly, the statement of facts in this section is limited to those contained in the materials the Court may consider in ruling on the motions to dismiss without converting them to Rule 56 motions for summary judgment. See, Illig, 652 F.3d at 976 (listing the evidence a court may consider when ruling on a motion to dismiss without converting the motion to one for summary judgment).

The Court will address the facts that are material to Plaintiff's motion for injunctive relief in a separate section.

The Court also notes that, after the February 11, 2015, motion hearing, Plaintiff has twice submitted numerous additional exhibits that he has asked the Court to review when ruling on the pending motions.  In doing so, Plaintiff is, in essence, seeking to amend his complaint to add new factual allegations without bringing a motion seeking or being granted leave to do so.  Although Plaintiff is proceeding pro se, he is not excused from following the Federal Rules of Civil Procedure. Burgs, 745 F.2d 528. Out of an abundance of caution, the Court reviewed the improperly submitted exhibits.  There is nothing in those exhibits which pertains to Plaintiff's claims against the named Defendants.

[3]Many of Plaintiff's allegations are conclusory statements unsupported by specific facts. The Court is not required to accept such conclusory unsupported statements as true even under the generous standard of viewing the evidence in the context of a motion to dismiss. Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions[.]" (internal quotation marks and citation omitted)).  Plaintiff also frequently alleges as fact numerous inferences that he wants the Court to draw from his allegations. The Court may only draw such inferences where warranted and supported by specific facts. Silver v.

Plaintiff has a self-professed background in newspaper journalism and has, since 2008, operated a blogging website as part of a freelance writing business. (See, Id. at 6-7, ¶¶ 18-22). In 2009, Picazio and her Florida associates began to file complaints with the EGFPD about the things that Plaintiff was posting about them on his website. (See, Id. at 4-5, 7-11, ¶¶ 28, 30-32, 34-37, 40-42, 45-46). Defendant Lieutenant Detective Rodney Hajicek recorded complaints made against Plaintiff by Picazio and her associates. (Id. at 7, ¶ 28). Defendant Hajicek stated that he received numerous reports against Plaintiff but noted that all were civil or non-criminal in nature. (Id.).

On June 2, 2009, Defendant Hajicek reported that he had received a call from Picazio, who complained about emails she was receiving from Plaintiff and things Plaintiff was writing about her on his website that were not true. (Id. at 8, ¶ 34). On June 18, 2009, Defendant Hajicek reported receiving a call about Plaintiff from one of Picazio's associates, asking Defendant Hajicek to tell Plaintiff that she did not want Plaintiff writing things about her company on his website. (Id. at 8, ¶ 35). Defendant Hajicek telephoned and spoke to Plaintiff on behalf of Picazio's associate's company. (Id. at 9, ¶ 36). Defendant Hajicek reported that he called Plaintiff and warned him that he would be advising individuals to seek harassment orders against Plaintiff in the future if there appeared to be a basis for it. (Id.). On July 20, 2009, Defendant Hajicek reported having received multiple complaints about Plaintiff from Picazio and her associates. (Id. at 9, ¶ 37). Defendant Hajicek also reported that he had printed emails he had received from Picazio and her associates that concerned Plaintiff and provided them to the

---

H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997) ("In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." (citing In re Syntex Corp. Securities Lit., 95 F.3d 922, 926 (9th Cir. 1996)). The Court's recitation of the facts reflects the specific factual allegations the Court must accept as true along with the reasonable inferences warranted by those specific facts.

county attorney to review to determine if any other action should be taken. (Id. at 10, ¶ 43). Defendant Hajicek did not include his responses to those emails in the collection of printouts. (Id. at 10, ¶ 44).

On July 7, 2009, a non-party EGFPD officer received a call from an individual who had given information to one of Picazio's associates. (Id. at 9-10, ¶ 38). The caller was concerned about how Plaintiff would react if Picazio's associate mentioned the caller's name. (Id.). A copy of the report was provided to Plaintiff. (Id. at 10, ¶ 39). The report listed Plaintiff's name but the caller's name had been redacted. (Id.). When Plaintiff asked Defendant East Grand Forks Police Chief Michael Hedlund to provide him with the caller's name, Defendant Hedlund refused, stating it was for the safety of the caller. (Id.).

On September 8, 2011, Picazio petitioned a Florida court for a protective order against Plaintiff. (Id. at 12-13, ¶ 52).  Plaintiff submitted three requests to the EGFPD for copies of police records that he believed would support a defense against the allegations in Picazio's petition. (Id. at 13, ¶53). Plaintiff followed the procedure for filling out the request forms and submitted them to the EGFPD duty officer. (Id.). Defendant Hajicek refused to provide Plaintiff with the requested records, in violation of the EGFPD's posted policy. (Id.).

Plaintiff reported to Defendant Hajicek that he had been told that Picazio's associates were likely to murder him if he chose to attend the hearing on the petition for the protective order. (Id. at 13, ¶ 54). Plaintiff also provided Defendant Hajicek with an affidavit from one of Picazio's associates averring that Picazio's husband had made threatening comments about Plaintiff. (Id.). Defendant Hajicek did not record Plaintiff's reports. (Id.).

The Florida court granted Picazio's petition for the protective order, which was issued on September 19, 2011. (Id. at 13, ¶ 55). The Florida protective order required that Plaintiff remove

all references he had made about Picazio on the internet. (<u>Id.</u>). The Florida protective order also required Plaintiff to surrender his firearms, ammunition, and associated permits. (<u>Id.</u>).

On November 21, 2011, Plaintiff was arrested on allegations that he had violated the Florida protective order by publishing comments about Picazio on the internet. (<u>Id.</u> at 14, ¶ 56). The arrest warrant was signed by Defendant Hajicek and Defendant East Grand Forks City Attorney Ronald Galstad. (<u>Id.</u> at 14, ¶ 57). Plaintiff was released pending trial on the condition that he not publish anything on the internet. (<u>Id.</u> at 14, ¶ 58).

On April 2, 2012, Plaintiff filed a complaint regarding the EGFPD's refusal to provide him with copies of the requested police records. (<u>Id.</u> at 14, ¶ 59; <u>Id.</u>, Ex. H). Pursuant to that complaint, Defendant Hedlund provided Plaintiff with copies of the requested records sometime thereafter.  (<u>See</u> <u>Id.</u> at 14, ¶ 59).

Defendant Minnesota Public Defender Michael LaCoursiere was appointed to defend Plaintiff on the charges that he had violated the Florida protective order. (<u>See</u>, <u>Id.</u> at 14-15, ¶ 60). A trial on the charges was set for October 29, 2012. (<u>See</u>, <u>Id.</u>). Defendant LaCoursiere told Plaintiff that he believed Plaintiff had a strong case. (<u>Id.</u>). On October 29, 2012, Defendant LaCoursiere told Plaintiff that Defendant Galstad wanted Plaintiff to accept a plea deal, pursuant to which Plaintiff would enter an <u>Alford</u> plea. (<u>Id.</u>). When Plaintiff initially refused, Defendant LaCoursiere told him that Defendant Galstad intended to offer at trial the testimony of two officers who would lie and that the police had a plan to put Plaintiff in a state prison. (<u>Id.</u> at 15, ¶ 60). Defendant LaCoursiere also told Plaintiff that, if he was put in prison, Plaintiff would not be able to see his children, and that nobody would believe him about what had really happened to a kidnapped child in Florida about whom Plaintiff had written. (<u>Id.</u>). Defendant LaCoursiere did not provide straight answers to Plaintiff's questions about whether Picazio would be present for

8

his trial.[4] (Id. at ¶ 61). Plaintiff began to believe that Defendant LaCoursiere was part of a conspiracy and decided to accept the offered plea deal. (Id. at ¶ 62).

At the hearing, Plaintiff entered an Alford plea. (See, Id.). Although Defendant LaCoursiere's appointment as Plaintiff's public defender would typically have terminated after the plea hearing, Defendant Galstad asked the presiding court, the Honorable Tamara Yon, District Court Judge for the Ninth District of the State of Minnesota, to allow Defendant LaCoursiere to continue representing Plaintiff until a compliance review hearing that had been scheduled for December 12, 2012, could be held. (Id. at ¶¶, 63-64). Judge Yon sentenced Plaintiff on October 29, 2012. (See, Id., Ex. J. (referring to sentencing order entered on October 29, 2012)).

On November 7, 2012, Defendant Hajicek received a call from Picazio's husband complaining about statements Plaintiff had again posted online. (Amended Complaint, [Docket No. 11], at 18, ¶ 77).

On December 10, 2012, Defendant Hajicek delivered to Defendant LaCoursiere notice of a motion that Defendant Galstad had filed on December 6, 2012,[5] requesting that the state court

---

[4] Plaintiff asks the Court to infer that Defendant Galstad falsely told the presiding court, the Honorable Tamara Yon, District Court Judge for the Ninth Judicial District of the State of Minnesota, that Picazio was present to testify at the trial set for October 29, 2012. (See Id. at 15). In support, Plaintiff alleges that Defendant Galstad told Judge Yon at the hearing on October 29, 2012, that he had Picazio's testimony about the Florida protective order, that the State did not ask Judge Yon to order Plaintiff pay the costs of plane tickets for Picazio, that Defendant City had not paid for plane tickets for Picazio, and that Defendant Galstad later asked Judge Yon to allow Picazio to testify via video-conferencing at a hearing in December of 2012. (Id. at 16, ¶ 66-69). Those specific facts do not warrant the inference that Defendant Galstad falsely told Judge Yon that Picazio was present to testify at the trial scheduled for October 29, 2012.

[5] Plaintiff's Amended Complaint states that Defendant Galstad filed the motion on October 6, 2012. (Id. at 16, ¶ 71). However, Plaintiff's other allegations indicate that the motion concerned alleged violations of the Florida protective order and the conditions of Plaintiff's sentence that were to be considered as part of the compliance hearing on December 12, 2012, and that, as a strategic decision, Defendant Galstad delayed filing the motion until it was too close to the compliance hearing for Plaintiff to bring himself in compliance with the terms of the sentence. (See, Id. at ¶¶ 77-72). In light of Plaintiff's other allegations, the Court finds that the reference to October 6, 2012, was a typo, and that the motion was filed on December 6, 2012.

find that Plaintiff had committed three violations of the Florida protective order and Plaintiff's sentence. (Id. at 16-17, ¶¶ 71-73). Plaintiff received notice of the motion by mail the next day and sent an email to Defendant LaCoursiere, who had intentionally not notified Plaintiff that he had received notice of the motion. (Id. at 16-17, ¶¶ 71, 75).

At the December 12, 2012, compliance hearing, Defendant Galstad asked Judge Yon to allow him to present evidence at that hearing. (Id. at 17, ¶ 73). Judge Yon refused the request and scheduled an evidentiary hearing regarding the alleged violations. (See, Id. at 76). At some point thereafter, Judge Yon allowed Plaintiff to withdraw the Alford plea that he had entered on October 29, 2012, and Judge Yon appointed a different public defender to represent Plaintiff.[6] (December 17, 2014, Motions Hearing, Digital Recording at 12:27 p.m.).  Plaintiff, advised by new counsel, ultimately entered a second Alford plea pursuant to a plea agreement. (Id.). After the compliance hearing, Plaintiff's hard drive was seized pursuant to a Minnesota state court search warrant as part of the investigation into whether Plaintiff had violated the conditions of the Florida protective order and his sentence. (Amended Complaint, [Docket No. 11], 19, ¶ 84). Between the date of the seizure and the time Plaintiff entered his second Alford plea, Defendant Galstad conditioned the return of Plaintiff's hard drive on Plaintiff entering the second Alford plea, withdrawing a complaint he had made against Defendant Galstad, and removing  articles that Plaintiff had published on the internet that were critical of local officials. (Id., 21, ¶ 97).

On December 13, 2014, Defendant East Grand Forks Police Officer Aeisso Schrage, applied for a warrant to search Plaintiff's residence for evidence, including documents contained on a computer hard drive, that Plaintiff had violated the Florida protective order and the terms of

---

[6] Plaintiff admitted at oral argument at the motions hearing on December 17, 2014, that Judge Yon had allowed him to withdraw his initial plea, had appointed Plaintiff a different public defender, and later accepted Plaintiff's second Alford plea, which Plaintiff entered after being advised by new counsel. (December 17, 2014, Motions Hearing, Digital Recording at 12:27 p.m.).  The Court may consider Plaintiff's admissions at the motion hearing as a matter of public record. See Illig, 652 F.3d at 976.

his sentence. (See, Amended Complaint, [Docket No. 11], Ex. J, 1). The Honorable Jeff Remick, District Court Judge of the Ninth Judicial District of the State of Minnesota, concluded that probable cause existed to believe that the identified evidence could be found in Plaintiff's residence. (Id. at 2). Judge Remick issued a warrant to search Defendant's residence for the evidence and seize it. (Id.).

On December 14, 2014, Plaintiff spoke to Defendant LaCoursiere about his case over the telephone. (Amended Complaint, [Docket No. 11], at 18, ¶ 83). During the conversation, Defendant Schrage and three other EGFPD officers stood in the hallway at the door to Plaintiff's apartment and listened to the conversation. (Id.). Shortly after the conversation ended, the four officers entered Plaintiff's apartment to execute the search warrant. (Id. at 19, ¶ 84). The officers seized Plaintiff's hard drive pursuant to the warrant. (Id.). Between the initial seizure of the hard drive and its return to Plaintiff, the officers kept incomplete records of who had possession of the hard drive and who had accessed it. (Id. at 19, 22, ¶¶ 86, 101).

On January 4, 2012, Defendant Galstad falsely told Judge Yon that the Minnesota Bureau of Criminal Apprehension ("MNBCA") would perform a forensic search of the contents of the hard drive, but needed a second search warrant before it would do so. (Id. at 19-20, ¶¶ 89-90). The MNBCA had not received a request to do a forensic search of Plaintiff's hard drive. (Id. at 20, ¶¶ 92-93). Defendant Schrage had provided the hard drive to Defendant Polk County Sheriff's Deputy Michael Norland on December 15, 2012. (Id. at 19, ¶ 86). Defendant Norland performed a forensic search of the contents of the hard drive pursuant to the search warrant. (Id.; December 17, 2014, Motions Hearing, Digital Recording at 12:03 p.m.). In January, 2014, Plaintiff filed a complaint against Defendant Norland with Defendant Polk County Sheriff Barb Erdman. (See Amended Complaint, [Docket No. 11], at 20, ¶ 91). Defendant Erdman told

Plaintiff that she believed that Defendant Norland's search of Plaintiff's hard drive had been legal. (Id.). Plaintiff received his hard drive back on April 26, 2013. (Id. at 21, ¶ 98). When Plaintiff received the hard drive back, it worked only briefly. (Id.).

On August 15, 2013, Plaintiff filed a complaint with the EGFPD that Defendant Schrage had misquoted Plaintiff when writing a police report about the execution of the search warrant. (Id. at 22, ¶ 100). Defendant Hedlund investigated and notified Plaintiff that he had found the complaint to be unfounded. (Id. at 22-23, ¶ 100-101).

In his Amended Complaint, Plaintiff also makes a number of allegations about the East Grand Forks EDHA, of which Defendant James Richter was the director. Plaintiff alleges that the EDHA provided a loan to an entity that failed to make payments on it. (Id. at 4). Defendant East Grand Forks City Administrator David Murphy reported that, on May 7, 2014, East Grand Forks officials, including Defendant Richter, met with members of the borrowing entity at the offices of Defendant Galstad. (Id.). On August 8, 2013, Plaintiff wrote an article on his website suggesting that the IRS may audit Defendant City. (Id. at 23, ¶ 107). On December 8, 2013, Plaintiff filed a report to the Minnesota State Auditor regarding Defendant City, requesting an audit. (Id. at ¶ 108).

In January of 2014, Plaintiff took employment with Five Star Enterprises, a contractor providing janitorial services for a National Weather Service ("NWS") facility in Grand Forks, North Dakota. (Id. at 22 ¶ 102). Part of Plaintiff's contract with Five Star involved plans to develop local business contacts for Five Star, which would lead to Five Star renting an office storefront for Plaintiff to operate out of. (Id.). The other part of Plaintiff's contract called for him to work providing janitorial services at the NWS facility, which required that he obtain a security clearance. (Id. at 22-23, ¶¶ 102, 109). As a step in obtaining his security clearance, Plaintiff

asked Karen Nelson, an EDHA employee with whom Plaintiff had contact as a result of receiving housing assistance from Defendant City, to fill out a form verifying his address. (Id. at ¶ 111). Nelson later informed Plaintiff that Defendant Richter had become nervous about the address verification form sent to Nelson and told her to shred it. (Id. at 23-24 ¶¶ 115, 117). Nelson told Plaintiff that Defendant Richter had ordered her to shred the form because Defendant Richter didn't trust Nelson. (Id.). Nelson eventually submitted a duplicate verification form and Plaintiff was granted a security clearance. (Id. at ¶ 121). When Plaintiff filed a complaint about the document being shredded, Defendant Murphy investigated and later informed Plaintiff that he had concluded that the form had been shredded in error. (Id. at 25, ¶ 124).

Defendant Ringuette is an administrative assistant at NWS, and was Plaintiff's point of contact for his janitorial work for Five Star at the NWS facility. (Id. at ¶ 110). Although Plaintiff began working at the NWS facility in January of 2014, he was not allowed in secure areas at the NWS facility by himself until he received his security clearance. (Id. at 23, ¶ 109). Plaintiff eventually received his security clearance on May 8, 2014. (Id. at 24, ¶ 117). Defendant Ringuette was notified that Plaintiff had been granted security clearance shortly thereafter but intentionally waited as much as thirteen days to inform Plaintiff or his employer.[7] (Id. at ¶¶ 121-123).

Soon after Plaintiff began working as a janitor at the NWS, Defendant Ringuette began making complaints about him to Plaintiff's employer. (Id. at 23, ¶ 110). Defendant Ringuette continued making such complaints for several months. (See Id. at 25, ¶¶ 124, 126-127). In making one such complaint on May 21, 2014, Ringuette mentioned to Plaintiff's employer that

---

[7]Plaintiff's allegations are ambiguous regarding the amount of time that Defendant Ringuette delayed in informing Plaintiff that he had received his security clearance. He alleges that Defendant Ringuette eventually informed him that he had received a security clearance sometime between May 8, 2014, - the day he was granted clearance- and May 21, 2014. However, for the reasons discussed below, any ambiguity in this regard is immaterial.

Plaintiff had a website and that Plaintiff has had problems with the police. (Id. at 25, ¶ 124). On July 11, 2014, Plaintiff's employer, Five Star, informed him that Defendant Ringuette had brought her complaints about Plaintiff to her superior at the NWS, who had in turn contacted Plaintiff's employer and said that if Plaintiff was not terminated, Five Star would not be recommended for any federal contracts. (Id. at 26, ¶ 130). Plaintiff's employer thereafter terminated Plaintiff's employment. (Id.).

On July 22, 2014, Plaintiff filed the present action against the Defendants in both their individual and official capacities. (Complaint, [Docket No. 1]. Plaintiff later filed an Amended Complaint, [Docket No. 11], that is the operative complaint. Plaintiff alleged that Defendants Galstad, Hajicek, LaCoursiere, Schrage, and City violated his rights to: 1) equal protection; 2) to make and enforce contracts under 42 U.S.C. § 1981; 3) to be free from retaliation for exercising his First Amendment rights; 4) to keep and bear arms under the Second Amendment; 5) to be free from malicious prosecution; 6) to trial by jury; 7) to be free from unreasonable searches and seizures under the Fourth Amendment; and 8) "to life, liberty, and property." (Amended Complaint, [Docket No. 11], Exhibit A, 4-9, ¶¶ 141-170). Plaintiff also alleged that Defendants Norland and Erdman violated his rights to: 1) equal protection; 2) to be free of retaliation for exercising his First Amendment rights; 3) to be free of malicious prosecution; 4) to be free of unreasonable searches and seizures; and, 5) to "life, liberty, and property." (Id. at 6-9, ¶¶ 155-170). Plaintiff further alleged that Defendants Richter, Murphy, and Ringuette had violated his rights: 1) to be free of retaliation for exercising his rights to free speech and freedom of the press; 2) to make and enforce contracts; and 3) to "life, liberty, and property." (Id. at 9-11, ¶¶ 171-185). Plaintiff also alleged that all Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by their actions. (Id. at 12, ¶¶ 186-189). In addition, at the February

11, 2015, hearing, Plaintiff clarified that he was also alleging that Defendant Ringuette had violated his right to equal protection. (February 11, 2015, Motions Hearing, Digital Recording at 11:49 a.m.).

Thereafter, the Defendants filed a series of Rule 12 motions to dismiss and in the alternative Rule 56 motions for summary judgment that are presently before the Court. (See, [Docket Nos. 13, 23, 32, 54, 61, and 84]).

## IV.  THE CITY DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT, [DOCKET NO. 13]

Plaintiff alleges that Defendants Galstad, Hajicek, LaCoursiere, Schrage, and City[8] violated his rights to: 1) equal protection; 2) to make and enforce contracts; 3) to be free of retaliation for exercising his First Amendment rights; 4) to keep and bear arms; 5) to be free from malicious prosecution; 6) to trial by jury; 7) to be free from unreasonable searches and seizures, and 8) "to life, liberty, and property." (Amended Complaint, [Docket No. 11], Exhibit A, 4-9, ¶¶ 141-170).  Plaintiff alleges that Defendants Richter and Murphy violated his rights: 1) to be free of retaliation for exercising his rights to free speech and freedom of the press; 2) to make and enforce contracts; 3) to "life, liberty, and property", and to equal protection. (Id. at 9-11, ¶¶ 171-185). Finally, Plaintiff alleged that all the City Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by their actions. (Id. at 12, ¶¶ 186-189).

---

[8]Plaintiff specifically alleged that the East Grand Forks Police Department violated his rights.  Plaintiff has not, however, named the East Grand Forks Police Department as a Defendant. (Amended Complaint, [Docket No. 11], Exhibit A, 4-6, ¶¶ 142-154). Nor could he. Under Minnesota law, absent authorization to sue and be sued, a department of a municipal entity is not subject to suit. Hyatt v. Anoka Police Dep't, 700 N.W.2d 502, 505-06 (Minn. Ct. App. 2005); In re Scott Cnty. Master Docket, 672 F. Supp. 1152, 1187 n.1 (D. Minn. 1987), aff'd sub nom. Myers v. Scott Cnty., 868 F.2d 1017 (8th Cir. 1989) ("[Municipal] departments or offices are not legal entities subject to suit; therefore, the claims against them must be dismissed."). Under the liberal standard for construing the pleadings of pro se plaintiffs, the Court construes the allegations Plaintiff made against the City of East Grand Forks Police Department as directed to the named defendant, Defendant City.

The City Defendants move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's claims against them with prejudice for failure to state a claim upon which relief can be granted.[9]

## A.  Vicarious Liability

As a threshold matter, the Court finds it necessary to address whether Plaintiff has submitted sufficient evidence to impose liability on any of the City Defendants for the actions of any of the other named Defendants, Picazio, or her other Florida associates. In general, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting Iqbal, 556 U.S. 662).

Courts have recognized, however, that government officials may be liable under section 1983 for the acts of a co-conspirator in furtherance of a conspiracy to violate a plaintiff's constitutional rights.  See, e.g., Simpson v. Weeks, 570 F.2d 240, 243 (8th Cir. 1978).  The Eighth Circuit has explained:

> To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. Id.

Burton v. St. Louis Bd. of Police Comm'rs, 731 F.3d 784, 798 (8th Cir. 2013) (quoting White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008)).

A claim of conspiracy under section 1983 requires a showing of sufficient evidence to support the conclusion that the defendants reached an agreement to deprive the plaintiff of

---

[9] In the alternative, the City Defendants move for summary judgment on each of Plaintiff's claims against them, contending that each is entitled to qualified immunity.

constitutionally guaranteed rights. Id. at 798-99 (quoting White, 519 F.3d at 816).  To show sufficient evidence of an agreement, a Plaintiff must provide "allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (quoting Kearse v. Moffett, 311 F.3d 891, 892 (8th Cir. 2002)). "Speculation and conjecture are not enough to prove a conspiracy exists." Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421–22 (4th Cir. 1996) (concluding that the evidence was insufficient where the plaintiff had shown important evidence had been misplaced but had offered no evidence of concerted action among the individuals claimed to be co-conspirators)).

Plaintiff's allegations about Defendant Hajicek are not sufficient to show that he came to a meeting of the minds with anyone to violate Plaintiff's constitutional rights. Plaintiff first alleges that Defendant Hajicek received, investigated, and reported the complaints that Picazio and her associates made about Plaintiff.  Plaintiff also alleges that Defendant Hajicek showed copies of the complaints to the county attorney to see if any *legal* action should be taken other than advising Picazio and her associates that they could obtain Florida harassment restraining orders against Plaintiff if the circumstances warranted it.  Even when viewed in the light most favorable to Plaintiff, those allegations show only that Picazio and her associates sought to invoke police authority by filing their complaints about Plaintiff. Evidence that a private individual merely filed a complaint with the police seeking to invoke police authority is not sufficient to show that the private individual conspired with the public official.  Young v. Harrison, 284 F.3d 863, 870 (8th Cir. 2002). As such, those allegations are not sufficient to allege that Defendant Hajicek conspired with Picazio and her associates to violate any of Plaintiff's constitutional rights.

Plaintiff also alleges that Defendant Hajicek, in violation of EGFPD policy, refused to provide Plaintiff with requested copies of the police reports, and refused to record Plaintiff's complaints that several of Picazio's associates had made threats against Plaintiff's safety. Even accepting those allegations as true, the only allegations that Plaintiff has offered to indicate that the possible misconduct arose from an agreement to violate Plaintiff's constitutional rights are conclusory assertions that Plaintiff has failed to support with allegations of specific fact.  Such conclusory assertions are insufficient to allege that Defendant Hajicek came to a meeting of the minds with anyone to violate Plaintiff's constitutional rights. <u>Murray</u>, 595 F.3d at 870.

Plaintiff next asserts that Defendant Schrage's actions while and after executing the Minnesota state court search warrant are evidence that he conspired with the other Defendants, and in turn, Picazio and her Florida associates. Plaintiff alleged that Defendant Schrage obtained and executed a search warrant at his apartment, seized Plaintiff's hard drive, asked Defendant Norland to perform a search of the hard drive, and later misquoted Plaintiff in a report. As discussed in more detail in section IV.D.2.b, below, the search of Plaintiff's hard drive did not violate the Fourth Amendment. Therefore any concerted actions that Plaintiff alleges with regard to the search of his hard drive cannot be the basis of an alleged conspiracy under section 1983. <u>See</u>, <u>Burton</u>, 731 F.3d at 798 (requiring a plaintiff to demonstrate a constitutional violation in order to show a conspiracy under section 1983). Nor are Plaintiff's other conclusory factual allegations sufficient to show that Defendant Schrage came to a meeting of the minds with anyone to participate in a plan to violate Plaintiff's constitutional rights.

Plaintiff has alleged absolutely nothing about Defendants City, Richter, Hedlund, or Murphy, to indicate that any of those Defendants came to a meeting of the minds with Picazio,

her Florida associates, or any of the other named Defendant to participate in a plan to deprive Plaintiff of a constitutional right.[10]

Courts have also held that, under RICO, a government official may be liable for the acts of another individual, provided both participate in the operation or management of a corrupt organization, as defined by the statute. See, Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). However, Plaintiff has alleged nothing but generic, conclusory statements that Defendants have violated RICO by their actions.  Mere conclusory allegations that a particular defendant has violated a statute or a constitutional right are insufficient to state a claim. Twombly, 550 U.S. at 555.

Based on the foregoing, the Court concludes that Plaintiff has failed to allege any specific facts in this case for which vicarious liability could be imposed on any of the City Defendants for the acts of Picazio, her Florida associates, or any of the other named Defendants.

## B.  Official Capacity Claims

To the extent that Plaintiff has alleged § 1983 claims against the City Defendants in their official capacities, Plaintiff is, in essence, alleging claims against Defendant City. See, Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). "[T]o establish the liability of an official acting in his official capacity, the plaintiff must prove that 'a policy or custom [of the city] caused the alleged violation.'" Id. (quoting Rogers v. City of Little Rock, 152 F.3d 790, 800 (8th Cir. 1998)).

---

[10]Although Plaintiff asks the Court to infer that Defendants Richter and Murphy are somehow involved in a conspiracy of silence regarding an allegedly improper loan made by the East Grand Forks EDHA, Plaintiff has alleged absolutely nothing to indicate that said alleged conspiracy involved an agreement to violate any of *Plaintiff's* constitutional rights.

Plaintiff makes two allegations with regard to the existence of relevant municipal policies and customs.  Plaintiff first alleges that Defendant Hajicek acted contrary to a posted policy when he refused to provide Plaintiff with copies of requested police reports. Assuming for the sake of argument that Defendant Hajicek's refusal violated one of Plaintiff's constitutional rights, the Court cannot conclude that the policy that Defendant Hajicek allegedly disobeyed had actually caused him to refuse Plaintiff the requested copies of the police reports. Plaintiff next generically and conclusorily alleges that all of the City Defendants were acting pursuant to municipal policies or customs in all of their actions.  That allegation is merely a recitation of one of the elements of a section 1983 claim against a municipal entity.  See, City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (noting that the first issue in a case alleging municipal liability under section 1983 is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").  A plaintiff's "formulaic recitation of the elements" of a claim will not suffice to state a claim upon which relief may be granted.  Twombly, 550 U.S. at 555. As such, Plaintiff's allegations are insufficient to state claims against the City Defendants in their official capacities.

Based on the foregoing the Court recommends **GRANTING** the City Defendant's Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to all of the claims against the City Defendants in their official capacities.

### C.  RICO Claims Against All City Defendants

As discussed in section IV.A, *supra*, Plaintiff has only generically and conclusorily alleged that each of the City Defendants has violated RICO by their actions.  Such conclusory allegations fail to state a claim upon which relief may be granted. Twombly, 550 U.S. at 555.

**D. Remaining Individual Capacity Claims**

1. City of East Grand Forks

Plaintiff has alleged no actions taken against Plaintiff by Defendant City itself.  To the extent that Plaintiff's allegations can be construed to assert that Defendant City is vicariously liable for the acts of its employees or the EGFPD, Plaintiff has failed to state a claim.

> [A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the moving force [behind] the constitutional violation.

Mettler, 165 F.3d at 1204 (internal citations and quotation marks omitted).  As discussed in section IV.B, *supra*, Plaintiff has failed to allege in anything other than a conclusory manner unsupported by specific facts, that any municipal policies or customs existed that were the motivating force behind any of the alleged violations of Plaintiff's constitutional rights.

Based on the foregoing, the Court recommends **GRANTING** the City Defendants' Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to the claims against Defendant City.

2. Officer Aeisso Schrage

In addition to the generic, conclusory assertions that Defendant Shrage violated Plaintiff's rights in the section of the Amended Complaint purporting to set forth the factual bases for his claims for relief, Plaintiff alleged in the fact section of his Amended Complaint that Defendant Schrage applied for, received, and executed a Minnesota state court warrant to search Defendant's residence for evidence that Plaintiff had violated the Florida protective order and the sentence entered against Plaintiff on October 29, 2012. Plaintiff also alleges that, just prior to executing that warrant, Defendant Schrage stood in the hallway outside the door to Plaintiff's apartment and listened to Plaintiff's telephone conversation with Defendant LaCoursiere.

21

Plaintiff further alleges that Defendant Schrage later misquoted in a report a statement that Plaintiff made in the course of that conversation.

    a.   First Amendment Retaliation Claim

Plaintiff's alleges that Defendant Schrage retaliated against him for exercising his First Amendment rights.

> In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, [Plaintiff] must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

Spencer v. Jackson Cnty. Mo., 738 F.3d 907, 911 (8th Cir. 2013).

Plaintiff contends that his publishing of statements about Picazio and her Florida associates on the internet in violation of the Florida protective order and his Minnesota state court sentence is constitutionally protected activity. Violation of an out-of-state harassment protective order, however, is criminal conduct in Minnesota. Minn. Stat. § 609.748, Subd. 6; see also, 18 U.S.C. § 2266(5)(a) (defining protection order to include orders issued for the purpose of preventing harassment against another person); 18 U.S.C. § 2265(a) (requiring states to enforce out-of-state protective orders as if issued in-state). Criminal conduct is not protected activity for the sake of First Amendment retaliation claims. Accordingly, Plaintiff has failed to allege sufficient specific facts to state a retaliation claim against Defendant Schrage.

    b.   Fourth Amendment Claim

Plaintiff next alleges that Defendant Schrage violated his Fourth Amendment rights to be free from unreasonable searches by listening through the door to Plaintiff's apartment and by later asking Defendant Norland to conduct a search of the contents of Plaintiff's seized computer hard drive.

To successfully plead a Fourth Amendment claim in a section 1983 action, Plaintiff must demonstrate that an unlawful search or seizure occurred and that the alleged Fourth Amendment violation was unreasonable. McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003) (citing Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999)).

Under Eighth Circuit precedent, Plaintiff's allegations that Defendant Schrage violated his Fourth amendment rights by standing in the hallway outside his apartment door and listening unaided to his telephone conversation through the door fail to state a claim of a Fourth Amendment violation. In United States v. Eisler, the Eighth Circuit held that an apartment resident did not have a reasonable expectation of privacy in the common hallway outside his apartment door upon which to challenge a law-enforcement officer's unaided listening to the defendant's conversations inside the apartment through the door. Eisler, 567 F.2d 814, 816 (8th Cir. 1977) (citing Katz v. United States, 389 U.S. 347 (1967)).

Plaintiff's allegations that Defendant Schrage unlawfully had Plaintiff's hard drive later searched also fail to state a claim of a Fourth Amendment rights violation. Plaintiff conclusorily alleges that the search warrant did not authorize that forensic search. The Court cannot accept Plaintiff's assertion of a legal conclusion as fact. Silver, 105 F.3d at 397 ("In considering a motion to dismiss, courts . . . reject conclusory allegations of law[.]"). The text of the Minnesota state court search warrant, in fact, specifically authorized Defendant Schrage to search Defendant's residence, person, and motor vehicle for evidence, "including records . . . contained on a computer hard drive," that Plaintiff had been violating the Florida protective order and the sentence entered against Plaintiff on October 29, 2012. (See Amended Complaint, [Docket No. 11], Ex. J, 1). "[A] lawful search extends to all areas and containers in which the object of the search may be found." United States v. Stoltz, 683 F.3d 934, 938 (8th Cir. 2012).  As a computer

hard drive may contain "records . . .  contained on a computer hard drive", the search warrant authorized a search of Plaintiff's hard drive.

###### c.   Remaining Claims Against Defendant Schrage

Plaintiff's alleges only legal conclusions unsupported by specific facts with respect to his claims that Defendant Schrage violated his right to equal protection, right to trial by jury, rights under the Second Amendment, right to make and enforce contracts, right to be free from malicious prosecution, and rights to "life, liberty, and property." The court cannot accept Plaintiff's asserted conclusions of law as a substitute for allegations of specific facts. Silver, 105 F.3d at 397. Plaintiff's conclusory allegations fail to state claims on which relief may be granted. Twombly, 550 U.S. at 555.

Based on the foregoing, the Court recommends **GRANTING** the City Defendants' Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to Plaintiff's claims against Defendant Schrage in his individual capacity.

##### 3.   EGFPD Chief of Police Michael Hedlund

Plaintiff did not identify any specific claims against Defendant Hedlund in the section of his Amended Complaint in which he purported to set out the factual bases for his claims for relief. In the fact section of his Amended Complaint, however, Plaintiff alleged that Defendant Hedlund refused to disclose to him the name of an individual who had filed a complaint about Plaintiff and that Defendant Hedlund investigated Plaintiff's claim that Defendant Schrage had misquoted Plaintiff when filing a police report and concluded that the complaint was unfounded.

a.   <u>Equal Protection</u>

Plaintiff conclusorily asserts that Defendant Hedlund did not provide him with equal protection when he did not provide Plaintiff with the name of the individual who had filed a complaint against him even though the police report listed Plaintiff's name.

Plaintiff does not assert at any time that he is a member of protected class and as such, can only be construed to be alleging a "class of one" equal protection claim.  To allege a "class of one" equal protection claim, a plaintiff must allege sufficient facts to show: 1) that the state actor intentionally treated the plaintiff differently than others who are similarly situated to the plaintiff; and 2) there was no rational basis for the differential treatment.  <u>Barstad v. Murray Cnty.</u>, 420 F.3d 880, 884 (8th Cir. 2005). The Court also notes that the Minnesota Government Data Practices Act authorizes Minnesota law enforcement agencies to withhold the identity of a complainant for the sake of protecting the complainant's safety. <u>See</u>, Minn. Stat. § 13.82, Subds. 14, 17(f).  Plaintiff has not alleged any specific facts to indicate that he is similarly situated to the individual whose name Defendant Hedlund did not disclose or to support the inference that Defendant Hedlund did not have a rational basis for treating Plaintiff, as the subject of the complaint, differently than the complainant.

Accordingly, Plaintiff has failed to state an equal protection claim against Defendant Hedlund.

b.   <u>Investigation of Complaint</u>

Plaintiff alleges that Defendant Hedlund "covered up" police misconduct when he investigated Plaintiff's complaint about Defendant Schrage and concluded that the complaint was unfounded. Plaintiff's allegations are, in essence, that Defendant Hedlund did not discipline Defendant Schrage as Plaintiff deemed appropriate. Plaintiff does not have a constitutional right

to have government employees disciplined as he deems appropriate. It is well recognized that government "entities, in their capacities as employers, have wide discretion and control over personnel decisions, internal affairs, discipline, and office policy." Belk v. City of Eldon, 228 F.3d 872, 880 (8th Cir. 2000) (citing Shands v. City of Kennett, 993 F.2d 1337, 1344 (8th Cir. 1993); Connick v. Myers, 461 U.S. 138 (1983); Ex parte Curtis, 106 U.S. 371, 373 (1882)). As Plaintiff has no right to have government employees disciplined as he deems appropriate, Plaintiff's allegations that Defendant Hedlund "covered up" police misconduct fail to state a claim of a constitutional violation on which relief may be granted.

Based on the foregoing, the Court recommends **GRANTING** the City Defendants' Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to Plaintiff's claims against Defendant Hedlund in his individual capacity.

4.  EGF City Administrator David Murphy

In addition to the generic, conclusory assertions that Defendant Murphy violated Plaintiff's rights in the section of the Amended Complaint purporting to set forth the factual bases for his claims for relief, Plaintiff alleged that Defendant Murphy investigated his complaint that Defendant Richter had ordered an EDHA employee to shred Plaintiff's address verification form, and concluded that the shredding had been done in error.

a.  Investigation of Complaint

Plaintiff's allegations that Defendant Murphy concluded that Defendant Richter had ordered the address verification form be shredded in error are another allegation that a Defendant was not disciplined as Plaintiff deemed appropriate. For the reasons discussed in section IV.D.3.b, *supra*, Plaintiff's allegations that Defendant Murphy covered up Defendant's Richter's

decision to have Plaintiff's address verification form shredded fails to state a claim of a constitutional violation on which relief may be granted.

      b.   <u>Remaining Claims against Defendant Murphy</u>

      Plaintiff's alleges only mere legal conclusions with respect to his claims that Defendant Murphy violated his right to equal protection, right to make and enforce contracts, rights to be free of retaliation for exercising his rights to free speech and freedom of the press, and rights to "life, liberty, and property." The court cannot accept Plaintiff's asserted conclusions of law as a substitute for allegations of specific facts. <u>Silver</u>, 105 F.3d at 397. Plaintiff's conclusory allegations fail to state claims of violations of constitutional rights on which relief may be granted. <u>Twombly</u>, 550 U.S. at 555.

      Based on the foregoing, the Court recommends **GRANTING** the City Defendants' Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to Plaintiff's claims against Defendant Murphy in his individual capacity.

      5.   <u>East Grand Forks EDHA Director James Richter</u>

      In addition to the generic, conclusory assertions that Defendant Richter violated Plaintiff's rights in the section of the Amended Complaint purporting to set forth the factual bases for his claims for relief, Plaintiff alleged that Defendant Richter had ordered an EDHA employee to shred an address verification form that Plaintiff needed to have completed and submitted in order to obtain a security clearance to do janitorial work for his employer, Five Star, at the NWS facility in Grand Forks.

a.   <u>First Amendment Retaliation Claim</u>

Plaintiff asks the Court to infer that Defendant Richter ordered the EDHA employee to shred the pertinent address verification form as an adverse action in retaliation for Plaintiff reporting Defendant City to the Minnesota State Auditor.

> In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, [Plaintiff] must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

<u>Spencer</u>, 738 F.3d at 911.

The specific factual allegations in Plaintiff's Amended Complaint, however, themselves indicate that Defendant Richter ordered an employee to shred the address verification form, not to take adverse action against Plaintiff, but because Defendant Richter did not trust his own employee who was working on completing the form.  In addition, Plaintiff has not alleged that he suffered any adverse action as a result of the shredding; indeed, Plaintiff received his security clearance following address verification by the City and Plaintiff does not allege any lost wages due to any purported delay receiving his security clearance.  Accordingly, Plaintiff has failed to allege a First Amendment retaliation claim against Defendant Richter.

b.   <u>Remaining claims against Defendant Richter</u>.

Plaintiff's alleges only mere legal conclusions with respect to his claims that Defendant Richter violated Plaintiff's right to equal protection, right to make and enforce contracts, and rights to "life, liberty, and property."  Plaintiff's conclusory allegations fail to state claims of violations of constitutional rights on which relief may be granted. <u>Silver</u>, 105 F.3d at 397; <u>Twombly</u>, 550 U.S. at 555.

Based on the foregoing, the Court recommends **GRANTING** the City Defendants' Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to Plaintiff's claims against Defendant Richter in his individual capacity.

6. <u>EGFPD Lieutenant Detective Rodney Hajicek</u>

In addition to the generic, conclusory assertions that Defendant Hajicek violated Plaintiff's rights in the section of the Amended Complaint purporting to set forth the factual bases for his claims for relief, Plaintiff alleged that Defendant Hajicek received, investigated, and reported the complaints Picazio and her Florida associates made about Plaintiff. Plaintiff also alleged that Defendant Hajicek printed off copies of the complaints to show to the county attorney to see if any legal action should be taken against Plaintiff.  Plaintiff also alleges that Defendant Hajicek refused to provide him with requested copies of police reports of the complaints. Plaintiff further alleges that Defendant Hajicek refused to record Plaintiff's own complaints that several of Picazio's out-of-state associates had made threats against Plaintiff's safety if Plaintiff chose to travel to Florida to appear at the hearing on Picazio's request for a Florida protective order.

a. <u>Equal Protection</u>

Plaintiff alleges that Defendant Hajicek violated his right to equal protection by refusing to provide him with the requested copies of police reports, and refusing to record threats made against Plaintiff by several of Picazio's associates in Florida.  Plaintiff is again alleging a "class of one" equal protection claim.  To allege a class of one equal protection claim, Plaintiff must allege sufficient facts to show: 1) that Defendant Hajicek intentionally treated Plaintiff differently than other similarly situated individuals; and 2) there was no rational basis for the differential treatment. <u>Barstad</u>, 420 F.3d at 884. Plaintiff has, however, failed to allege the

existence of any other individuals who are similarly situated to him and with respect to whom Plaintiff received differential treatment. Accordingly, Plaintiff's allegations fail to state an equal protection claim against Defendant Hajicek.

b. First Amendment Retaliation Claim

Plaintiff also alleges that Defendant Hajicek retaliated against Plaintiff for exercising his rights to free speech and freedom of the press.

> In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, [Plaintiff] must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

Spencer, 738 F.3d at 911.

With regard to Defendant Hajicek's actions prior to the issuance of the Florida protective order, Plaintiff has failed to allege specific facts on which to infer that Defendant Hajicek's investigation of the complaints filed by Picazio and her Florida associates and failure to record Plaintiff's complaints about Picazio's Florida associates resulted in any adverse effects to Plaintiff.  In addition, Plaintiff has failed to allege specific facts on which to conclude that Defendant Hajicek's refusal to provide Plaintiff with copies of the requested police reports, while allegedly adverse to Plaintiff, was specifically motivated by Plaintiff's exercise of his First Amendment rights.  Accordingly, Plaintiff's specific factual allegations with regard to Defendant Hajicek's actions before the issuance of the Florida state protective order fail to state a First Amendment retaliation claim.

With regard to Defendant Hajicek's actions after the issuance of the Florida state protective order, Plaintiff erroneously assumes that his criminal actions in violating the Florida protective order and, later, the Minnesota state court sentence entered against Plaintiff on

October 29, 2012, constituted protected First Amendment activity.  <u>See</u>, Minn. Stat. § 609.748, Subd. 6; <u>see also</u>, 18 U.S.C. §§ 2265(a) and 2266(5)(a). Criminal conduct is not protected activity for the purpose of First Amendment retaliation claims. Accordingly, Plaintiff's allegations with regard to Defendant Hajicek's actions following the issuance of the Florida protective order also fail to state a First Amendment retaliation claim.

c.   <u>Remaining Claims against Defendant Hajicek</u>

Plaintiff's alleges only generic mere legal conclusions with respect to his claims that Defendant Hajicek violated Plaintiff's rights to make and enforce contracts, to keep and bear arms, to be free from malicious prosecution, to trial by jury, to be free from unreasonable searches and seizures, and to "life, liberty, and property." Plaintiff's conclusory allegations fail to state claims of violations of constitutional rights on which relief may be granted. <u>Silver</u>, 105 F.3d at 397; <u>Twombly</u>, 550 U.S. at 555.

Based on the foregoing, the Court recommends **GRANTING** the City Defendants' Motion to Dismiss, [Docket No. 13], to the extent the motion pertains to Plaintiff's claims against Defendant Hajicek in his individual capacity.

**E.  Alternate Rationale – Qualified Immunity**

Assuming for the sake of argument that Rule 12(b)(6) did not require the dismissal of Plaintiff's claims against the City Defendants, the Court concludes Plaintiff's claims should still be dismissed as the City Defendants are also entitled to qualified immunity on the facts as alleged in the Amended Complaint.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223,

231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A two-step process is used for resolving qualified immunity claims: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right . . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (citations omitted).

Plaintiff's allegations in his Amended Complaint fail at the first step of the analysis.  As discussed in more detail in the sections above, Plaintiff's specific factual allegations failed to make out plausible claims of violations of any of Plaintiff's articulated constitutional rights. Consequently, the Court would alternatively recommend that those claims be **DISMISSED** on the grounds of qualified immunity.

### F.  Plaintiff's Claims Should be Dismissed with Prejudice

Having concluded that the City Defendant's motion to dismiss pursuant to Rule 12(b)(6) should be granted in its entirety[11], the Court turns to whether Plaintiff's claims against the City Defendants should be dismissed with prejudice. There is a split in practice among the Federal courts about whether a Rule 12(b)(6) dismissal is normally one with prejudice or without prejudice.[12] While the Eighth Circuit does not appear to have addressed the issue directly,

---

[11] Because the Court recommends granting the City Defendants' Motion to Dismiss, [Docket No.13], in its entirety, either on the basis that Plaintiff has failed to state claims on which relief may be granted or on the basis that the City Defendants are entitled to qualified immunity for their actions, the Court does not address the City Defendant's alternative motion for summary judgment.

[12] Compare CNH America LLC v. Int'l Union, 645 F.3d 785, 795 (6th Cir. 2011) (explaining that "[o]rdinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects ... [b]ut if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment. A district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion."); Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999) (holding that "the district court should not have dismissed the complaint with prejudice without

decisions from the Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures. See Michaelis v. Neb. State Bar Ass'n, 717 F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend. But if the plaintiff has persisted in violating Rule 8 the district court is justified in dismissing the complaint with prejudice." (internal citation omitted)); Larson v. Stow, 36 F.3d 1100 (8th Cir. 1994) (table decision); Patil v. Minnesota State University, Mankato, No. 12–cv–1052 (JRT/JSM), 2012 WL 7807608, at *10 (D.Minn. Dec. 10, 2012).

However, the Court notes that, as Plaintiff's claims against the City Defendants are also barred by qualified immunity, the claims must be dismissed with prejudice as they fail at the outset as a matter of law. See, Trendle v. Campbell, 465 Fed. Appx. 584, 585 (8th Cir. 2012) (unpublished) (upon finding that defendant was entitled to qualified immunity, modifying judgment to reflect dismissal with prejudice) (citing Moore v. Briggs, 381 F.3d 771, 775 (8th Cir. 2004) (upon concluding that defendants were entitled to qualified immunity, remanding case with directions to dismiss claims against them with prejudice)).

Based on the forgoing, the Court recommends that all of Plaintiff's claims against the City Defendants be **DISMISSED with prejudice**.

---

permitting [the plaintiff] an opportunity to amend," and explaining that "[t]he better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim."); with Petty v. County of Franklin, Ohio, 478 F.3d 341, 346 (6th Cir. 2007) ("12(b)(6) dismissal ... is generally construed as a dismissal with prejudice on the merits"); Higgins v. City of Tulsa, Oklahoma, 103 Fed.Appx. 648, 651 (10th Cir. 2004) (unpublished) ("[A] dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice."); Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 133 (D.C.Cir. 2012) (Kavanaugh, J. concurring) ("On the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise."); City of Jefferson v. Cingular Wireless, LLC, 2007 WL 1965572, at *5 (W.D.Mo. Jul. 3, 2007) (explaining that "dismissals under Rule 12(b)(6) are generally with prejudice," but "[g]iven the contorted procedural history of this dispute," dismissing the claim without prejudice).

## V.      THE COUNTY DEFENDANT'S MOTION TO DISMISS, [DOCKET NO. 23]

The County Defendants move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's claims against them for failure to state a claim upon which relief may be granted.

### A.  Vicarious Liability

As in section IV.A, *supra*, the Court deems it necessary to first consider whether Plaintiff has alleged sufficient specific facts that would justify imposing liability on either of the County Defendants for the actions of Picazio, her Florida associates, or of any of the other named Defendants.  In general, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish, 594 F.3d at 1001 (quoting Iqbal, 556 U.S. 662). Courts have recognized that government officials may, however, be liable under section 1983 for the acts of a coconspirator in furtherance of a conspiracy to violate a plaintiff's constitutional rights.

Similar to the allegations against the City Defendants, Plaintiff's allegations against the County Defendants fail to set forth any specific facts upon which to infer that either of the County Defendants came to a meeting of the minds with anyone to participate in a plan to violate Plaintiff's constitutional rights.  See, Murray, 595 F.3d at 870 (holding that a conspiracy claim under section 1983 requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators

In addition, as the Court has already discussed in section IV.A, *supra*, the Court cannot accept Plaintiff's mere conclusory legal allegations that the County Defendants violated RICO as a substitute for allegations of specific facts.

Based on the foregoing, the Court concludes that Plaintiff has failed to allege any specific facts on which vicarious liability could be imposed on either of the County Defendants for the acts of Picazio, her Florida associates, or any of the other named Defendants.

## B.  Official Capacity Claims

Plaintiff's claims against each of the County Defendants in their official capacities are, in essence, claims against Polk County. See, Elder-Keep, 460 F.3d at 986. "[T]o establish the liability of an official acting in his official capacity, the plaintiff must prove that "a policy or custom [of the County] caused the alleged violation." Id. (citing Rogers, 152 F.3d at 800). Plaintiff has alleged absolutely no specific facts that Polk County maintained policies or customs that motivated any alleged constitutional violations by County Defendants Erdman or Norland.

Based on the foregoing the Court recommends **GRANTING** the County Defendant's Motion to Dismiss, [Docket No. 23], to the extent the motion pertains to all of the claims against the County Defendants in their official capacities.

## C.  RICO Claims Against Both County Defendants

As discussed in sections IV.A and V.A, *supra*, Plaintiff has only generically and conclusorily alleged that each of the County Defendants has violated RICO by their actions. Such conclusory allegations fail to state a claim upon which relief may be granted. Twombly, 550 U.S. at 555.

## D.  Remaining Individual Capacity Claims

### 1.  Defendant Polk County Sheriff's Deputy Michael Norland

Plaintiff makes no specific claims against Defendant Norland in the section of his Amended Complaint purporting to set forth the factual bases for his claims for relief.  Plaintiff, however, alleges that Defendant Norland performed a forensic search of Plaintiff's computer

hard drive pursuant to an issued Minnesota state court search warrant that did not authorize the search, and that Defendant Norland viewed some of Plaintiff's private files while doing so.

The Court cannot accept Plaintiff's assertion of a legal conclusion that the search warrant did not authorize the search of the hard drive as a fact. Silver, 105 F.3d at 397. In addition, contrary to Plaintiff's assertion, the text of the search warrant expressly authorized law enforcement to search Plaintiff's residence for "records . . . including those contained on a hard drive" as evidence that Plaintiff may have violated the Florida protective order and Plaintiff's sentence entered against Plaintiff on October 29, 2012. (Amended Complaint, [Docket No. 11], Ex. J). "[A] lawful search extends to all areas and containers in which the object of the search may be found." Stoltz, 683 F.3d at 938. It is axiomatic that "records . . . contained on a hard drive" may be found on a hard drive. As such, the search warrant expressly authorized the search of Plaintiff's hard drive.

Plaintiff also alleges that Defendant Norland violated his Fourth Amendment rights by viewing Plaintiff's private files while performing the forensic search of Plaintiff's hard drive. There is a dearth of Eighth Circuit cases that are directly on point on this issue.  However, courts from other circuits that have considered the issue have found that, where an officer conducting a search, pursuant to warrant that authorizes a search for a particular type of computer file, encounters files that are not identified in the warrant but are intermingled with those that are, the officer does not offend the Fourth Amendment merely by viewing the files not listed in the warrant. See, e.g., United States v. Miranda, 325 F. App'x 858, 860 (11th Cir. 2009) (holding that, under the plain view doctrine, officer lawfully viewed and seized pornographic files intermingled with counterfeiting files mentioned in the search warrant). The Court finds the

reasoning of those courts persuasive.  As such, Plaintiff has failed to state a Fourth Amendment claim against Defendant Norland.

Based on the foregoing, the Court recommends **GRANTING** the County Defendants' Motion to Dismiss, [Docket No. 23], to the extent the motion pertains to Plaintiff's claims against Defendant Norland in his individual capacity.

2. Defendant Polk County Sheriff Barb Erdman

Plaintiff makes no claims against Defendant Erdman in the section of his Amended Complaint purporting to set forth the factual bases for his claims for relief.  In the fact section of his Amended Complaint, however, Plaintiff alleges that, after he filed a complaint about Defendant Norland's search of Plaintiff's computer hard drive, Defendant Erdman expressed her opinion that the search was legal.

Plaintiff's allegation is yet another attempt to plead a claim of a constitutional violation for failure to discipline a government employee in a manner that Plaintiff deemed appropriate. As the Court has already articulated in section IV.D.3.b, *supra*, Plaintiff has no constitutional right to have a government employee disciplined in a manner that he deems appropriate. Accordingly, Plaintiff has failed to state a claim against Defendant Erdman upon which relief may be granted.

Based on the foregoing, the Court recommends **GRANTING** the County Defendants' Motion to Dismiss, [Docket No. 23], to the extent the motion pertains to Plaintiff's claims against Defendant Erdman in her individual capacity.

**E.  Alternate Rationale – Qualified Immunity**

Assuming for the sake of argument that Rule 12(b)(6) did not require the dismissal of Plaintiff's claims against the County Defendants, the Court concludes that Plaintiff's claims should still be dismissed as the County Defendants are also entitled to qualified immunity on the facts as alleged in the Amended Complaint.

A two-step process is used for resolving qualified immunity claims: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right . . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (citations omitted).

Plaintiff's allegations in his Amended Complaint against the County Defendants fail at the first step of the analysis.  As discussed in more detail in the sections above, the specific facts that Plaintiff has alleged failed to make out plausible claims that any of the County Defendants violated any of Plaintiff's constitutional rights. Consequently, the Court would alternatively recommend that those claims be **DISMISSED** on the grounds of qualified immunity.

**F.  Plaintiff's Claims Should be Dismissed with Prejudice**

Because Plaintiff's allegations against the County Defendants are also barred under the doctrine of qualified immunity, the claims should be dismissed with prejudice as they fail at the outset as a matter of law. See, Trendle, 465 Fed. Appx. at 585 (citing Moore, 381 F.3d at 775). See, also, section IV.F, *supra*.

Based on the forgoing, the Court recommends that all of Plaintiff's claims against the City Defendants be **DISMISSED with prejudice**.

## VI.   DEFENDANT GALSTAD'S MOTION TO DISMISS, [DOCKET NO. 32], and AMENDED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, [DOCKET NO. 54].

Defendant Galstad filed his Motion to Dismiss, [Docket No. 32], after Plaintiff filed his initial complaint. After Plaintiff filed his Amended Complaint, [Docket No. 11], Defendant Galstad filed his Amended Motion to Dismiss or, in the alternative, for Summary Judgment, [Docket No. 54]. At the motion hearing, however, Defendant Galstad clarified that he was proceeding on his motion to dismiss, pursuant to Federal Rule of Procedure 12(b)(6), and only challenging the sufficiency of the allegations in Plaintiff's amended complaint. (December 17, 2014, Motions Hearing, Digital Recording at 12:14 p.m.).

### A.  Vicarious Liability

The Court again deems it necessary to determine whether Plaintiff has alleged any specific factual allegations supporting the imposition of liability on Defendant Galstad for the actions of Picazio, her Florida associates, or any other named Defendant.  Generally, in a section 1983 suit, a plaintiff must plead that each "Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish, 594 F.3d at 1001 (quoting Iqbal, 556 U.S. 662).

Courts have recognized, however, that government officials may be liable under section 1983 for the acts of a coconspirator in furtherance of a conspiracy to violate a plaintiff's constitutional rights.  See, e.g., Simpson, 570 F.2d at 243.

> To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. Id.

Burton, 731 F.3d at 798 (quoting White, 519 F.3d at 814).

A claim of conspiracy under section 1983 requires a showing of sufficient evidence to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. Id. at 798-99 (quoting White, 519 F.3d at 816).  To show sufficient evidence of an agreement, a Plaintiff must provide "allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray, 595 F.3d at 870.

Of all of the specific facts that Plaintiff has alleged against Defendant Galstad, only the allegations that Defendant Galstad intended to call to the stand two non-party officers who would testify falsely as part of a plan to put Plaintiff in a state prison warrant a possible inference that Defendant Galstad came to a meeting of the minds to participate in a plan to deprive Plaintiff of a constitutional right, namely Plaintiff's right to due process.  See, Napue v. People of State of Ill., 360 U.S. 264, 269 (1959) (holding that a State obtaining a conviction through false evidence it introduced or allowed to be introduced is a violation of a defendant's due process rights under the Fourteenth Amendment).  In the context of reviewing the motion to dismiss, the Court must accept those factual allegations as true. Silver, 105 F.3d at 397. However, Plaintiff has offered no specific factual allegations about the actions of those two unnamed officers. In addition, those allegations are not sufficient to allege that Defendant Galstad conspired with Picazio or her Florida associates.

With regard to whether Plaintiff's specific factual allegations support a reasonable inference that Defendant Galstad conspired with any of the other named Defendants, Plaintiff specifically argues that Defendant Galstad conspired with Defendant LaCoursiere, pointing to his allegations that Defendant LaCoursiere abruptly changed his assessment of the strength of

Plaintiff's case on the day of trial, communicated Defendant Galstad's plea offer to Plaintiff, and described the nature of the State's case against Plaintiff.  Plaintiff also points to his factual allegations that, pursuant to a request from Defendant Galstad, Defendant LaCoursiere continued to represent Plaintiff after the entry of the plea, and that Defendant LaCoursiere did not contact Plaintiff immediately upon receiving notice of Defendant Galstad's compliance motion on December 10, 2012.

As a general rule, defense counsel has a duty to communicate plea offers to a defendant. Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012).  Similarly, defense counsel has a duty to apprise a defendant of his available options and the possible consequences of choosing amongst those alternatives.  Hawkman v. Parratt, 661 F.2d 1161, 1170 (8th Cir. 1981). In addition, numerous courts have found that defense counsel advising a defendant of the nature of the government's case to be within the range of effective assistance, even where the defense counsel repeatedly emphasized the strength of the government's case and urged the defendant to accept a plea deal. See, e.g., Purdy v. United States, 208 F.3d 41, 46 (2d Cir. 2000).  In light of such cases, the Court finds that Plaintiff's specific allegations about Defendant LaCoursiere's actions on October 29, 2012, are insufficient to allege that Defendant Galstad and Defendant LaCoursiere came to a meeting of the minds to violate any of Plaintiff's constitutional rights.[13]  Nor are the allegations that Defendant Galstad asked Judge Yon to allow Defendant LaCoursiere to continue representing Plaintiff through the compliance hearing and that Defendant LaCoursiere did not immediately notify Plaintiff upon receiving notice of Defendant Galstad's December 6, 2012,

---

[13] Indeed, the Court notes that during the December 17, 2014, hearing, the Plaintiff acknowledged that he was permitted by the Minnesota state court judge to withdraw his initial Alford plea, was appointed a new public defender to replace Defendant LaCoursiere, and ultimately, upon the advice of his new public defender (about whom Plaintiff does not complain), he again entered an Alford plea under the same plea agreement terms as we originally offered by Defendant Galstad to Plaintiff through Defendant LaCoursiere. (December 17, 2014, Motions Hearing, Digital Recording at 12:27 p m.).  This acknowledgement contradicts Plaintiff's allegations that plea negotiations between Defendant Galstad and Defendant LaCoursiere were conspiratorial in nature designed to deprive Plaintiff of procedural due process.

compliance motion, sufficient to show a meeting of the minds between Defendant Galstad and Defendant LaCoursiere to violate any of Plaintiff's constitutional rights.

Finally, Plaintiff has made no other specific factual allegations on which the Court could conclude that Defendant Galstad conspired with any of the other named Defendants to engage in a conspiracy to violate Plaintiff's constitutional rights. Nor has Plaintiff alleged any specific facts on which liability for the acts of another could be imposed on Defendant Galstad under RICO. See, Twombly, 550 U.S. at 555.

Because Plaintiff has not alleged specific facts from which the Court could find that Defendant Galstad conspired with Picazio, Picazio's Florida associates, or any of the other named Defendants, or violated RICO, and because the specific facts Plaintiff has alleged relate only to two non-party officers about whose actions Plaintiff has made no specific factual allegations, the Court can only assess the merits of Plaintiff's claims against Defendant Galstad on the basis of Defendant Galstad's own actions as alleged by Plaintiff in the Amended Complaint.

## B.  Official Capacity claims

Plaintiff's claims against Defendant Galstad in his official capacity are, in essence, claims against Defendant City. See, Elder-Keep, 460 F.3d at 986. "[T]o establish the liability of an official acting in his official capacity, the plaintiff must prove that "a policy or custom [of the City] caused the alleged violation." Id. (citing Rogers, 152 F.3d at 800). As discussed in section IV.B, supra, Plaintiff has not alleged in other than a conclusory manner, unsupported by any specific facts, the existence of any policies or customs of Defendant City that motivated Defendant Galstad's actions.

Based on the foregoing the Court recommends **GRANTING** Defendant Galstad's Amended Motion to Dismiss, [Docket No. 54], to the extent the motion pertains to all of the claims against the Defendant Galstad in his official capacity.

## C.  RICO Claim

As discussed in section IV.A and V.A, *supra*, Plaintiff has only generically and conclusorily alleged that Defendant Galstad violated RICO by his actions. Such mere conclusory allegations are insufficient to state a claim upon which relief may be granted. Twombly, 550 U.S. at 555.

## D.  Claims against Defendant Galstad in his Individual Capacity.

Plaintiff has generically and conclusorily alleged that Defendant Galstad violated his rights to: 1) equal protection; 2) to make and enforce contracts; 3) to be free of retaliation for exercising his First Amendment rights; 4) to keep and bear arms under the Second Amendment; 5) to be free from malicious prosecution; 6) to trial by jury; 7) to be free from unreasonable searches and seizures; and 8) to "life, liberty, and property." (Amended Complaint, [Docket No. 11], Exhibit A, 6-9, ¶¶ 155-170).

As a threshold matter, however, Defendant Galstad contends that the Court must dismiss Plaintiff's claims against him as he is entitled to absolute immunity for his actions as a prosecutor.

> A prosecutor enjoys absolute immunity for acts performed "in initiating a prosecution and in presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "[F]unctions [] 'intimately associated with the judicial phase of the criminal process[]' as opposed to investigative 'police work' or administrative duties [are] absolutely shielded" from liability under section 1983 claims. Myers v. Morris, 810 F.2d 1437, 1445 (8th Cir. 1987) (quoting Imbler, 424 U.S. at 430, 96 S.Ct. 984), abrogated on other grounds, Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Immunity is not defeated by allegations of malice, vindictiveness, or self-interest. Id. at 1446.

Reasonover v. St. Louis Cnty., Mo., 447 F.3d 569, 579-80 (8th Cir. 2006).

Nearly all of Plaintiff's specific factual allegations about Defendant Galstad concern actions that Defendant Galstad took while performing prosecutorial functions.  As Plaintiff has not alleged that Defendant Galstad provided a sworn statement in support of the application for the arrest warrant he signed, Defendant Galstad's signing of the application for a warrant for Plaintiff's arrest was done as part of the initiation of the state's case against Plaintiff. See, Winslow v. Smith, 672 F. Supp. 2d 949, 966 (D. Neb. 2009) (noting a prosecutor has absolute immunity for conduct in the preparation of an arrest warrant unless he acts as a witness (citing Kalina v. Fletcher, 522 U.S. 118 (1997)).  Defendant Galstad's alleged participation in a plan to present false testimony, and subsequent offer of a plea agreement to Plaintiff were also part of his actions as a prosecutor. Reasonover, 447 F.3d at 580 ("Even if [the prosecutor] knowingly presented false, misleading, or perjured testimony, . . . he is absolutely immune from suit."); see also, Winslow, 672 F. Supp. 2d at 966 (citing Myers v. Morris, 810 F.2d 1437, 1446 (8th Cir. 1987) (prosecutor's activities in plea bargaining context warrant absolute immunity), overruled on other grounds by Burns v. Reed, 500 U.S. 478 (1991)).  Defendant Galstad's representations to Judge Yon during the plea hearing and request that Defendant LaCoursiere continue to represent Plaintiff through the sentencing and compliance hearings were also taken as part of the state's presentation of its case.  Similarly, Defendant Galstad's filing of a motion prior to the compliance hearing, asking Judge Yon to accept evidence at the compliance hearing, and asking to have a witness appear at the compliance hearing by video-conference were part of the State's presentation of its case against Plaintiff.  Finally, Defendant Galstad's actions in negotiating the terms of a second plea agreement with Plaintiff through his new public defender was part of the

State's prosecution of its case. See, Winslow, 672 F. Supp. 2d at 966. With regard to all of those actions, Defendant Galstad has absolute immunity.[14]

Based on the foregoing the Court recommends **GRANTING** the Defendant's Amended Motion to Dismiss, [Docket No. 54], to the extent the motion pertains to all of the claims against Defendant Galstad in his individual capacity.  Because all of Plaintiff's claims against Defendant Galstad are barred by absolute immunity and fail as a matter of law at the outset, the claims should be **DISMISSED with prejudice**. See Davis v. S. Dakota Dep't of Corr., No. CIV. 05-4016, 2005 WL 1593050, at *1 (D.S.D. June 30, 2005) ("Defects which cannot be cured by amendment are recommended for dismissal *with prejudice* because as a matter of law plaintiff's allegations fail to state a claim upon which relief can be granted against those defendants and because the defect cannot be cured by amendment.").[15]

## VII.   DEFENDANT LACOURSIERE'S MOTION TO DISMISS, [DOCKET NO. 61]

Defendant Michael LaCoursiere moves the Court to dismiss Plaintiff's claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court does not have subject matter jurisdiction over Plaintiff's claims against him in his official

---

[14] The only action taken by Defendant Galstad that is not part of the prosecution of the State's case against Plaintiff is the allegedly false representation Defendant Galstad made to Judge Yon while attempting to obtain a second search warrant for the contents of Plaintiff's hard drive. When a prosecutor performs actions traditionally reserved for law enforcement officers, such as requesting a search warrant, the prosecutor is entitled only to qualified immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Plaintiff's sole remaining allegation that Defendant Galstad made a false representation to Judge Yon when asking for a second warrant to search Plaintiff's hard drive fails to set forth sufficient facts on which to conclude that Defendant Galstad violated Plaintiff's rights to equal protection, to make and enforce contracts, to be free of retaliation for exercising his First Amendment rights, to keep and bear arms under the Second Amendment, to be free from malicious prosecution, to trial by jury, to be free from unreasonable searches and seizures, or to "life, liberty, and property."

[15] Because the Court recommends granting Defendant Galstad's Amended Motion to Dismiss, [Docket No. 54], the Court does not address the merits of Defendant Galstad's alternative motion for summary judgment.  The Court also recommends **DENYING as moot**, Defendant Galstad's Motion to Dismiss, [Docket No. 32], which was not withdrawn.

capacity, and that Plaintiff's claims against him in his individual capacity fail to state claims on which relief may be granted.

### A.  Official Capacity Claims

Defendant LaCoursiere first contends that, as a public defender appointed by the state of Minnesota, he is a state official and, as such, the Eleventh Amendment bars federal courts from exercising jurisdiction over section 1983 claims against him in his official capacity.

> The Eleventh Amendment is an explicit limitation on the judicial power of the United States. It deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction. For example, if a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred from awarding damages against the state treasury even though the claim arises under the Constitution. Similarly, if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim. The Amendment thus is a specific constitutional bar against hearing even *federal* claims that otherwise would be within the jurisdiction of the federal courts.

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120 (1984) (internal quotation marks and citations omitted).

As the Court has discussed above, a claim against a state official in his or her official capacity is the functional equivalent of a claim against the entity of which the official is an agent. See, Elder-Keep, 460 F.3d at 986.  As Defendant LaCoursiere was appointed by the Minnesota State Public Defender's Office, he was an agent of the State of Minnesota.  See, Eling v. Jones, 797 F.2d 697, 699 (8th Cir. 1986) (referring to the Minnesota State Public Defender's Office as a state official).  A State may only be sued in a federal court where Congress has expressly and unmistakably abrogated the State's sovereign immunity to suit or the State has expressly waived it. See, Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Pennsylvania v. Union Gas Co., 491

U.S. 1, 14–23, 57 (1989); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)). There is no indication that Congress has expressly and unmistakably abrogated the State of Minnesota's sovereign immunity to section 1983 claims.  Nor has the State of Minnesota waived its sovereign immunity to such claims. See, DeGidio v. Perpich, 612 F.Supp 1383 (D.Minn. 1985) (concluding that "[w]hile Minnesota has waived its sovereign immunity to some extent in Minn. Stat. § 3.736, the language of subdivision 2 of that section does not clearly show that Minnesota intended to waive any claim of sovereign immunity in federal court."); see also, Mashak v. Minnesota, No. CIV. 11-473 JRT/JSM, 2012 WL 928225, at *35 (D. Minn. Jan. 25, 2012) ("Minnesota has not waived its immunity from § 1983 claims, which is the vehicle used to bring claims for violations of the Constitution and its Amendments."), report and recommendation adopted, No. CIV. 11-473 JRT/JSM, 2012 WL 928251 (D. Minn. Mar. 19, 2012).  Accordingly, Plaintiff's claims against Defendant LaCoursiere in his official capacity are barred by the Eleventh Amendment.

Based on the foregoing the Court recommends **GRANTING** Defendant LaCoursiere's Motion to Dismiss, [Docket No. 61], to the extent the motion pertains to all of the claims against Defendant LaCoursiere in his official capacity.

### B.  Individual Capacity Claims

Defendant LaCoursiere next contends that Plaintiff's claims against him in his individual capacity fail to state a claim on which relief may be granted. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Neighborhood Enterprises, Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir. 2008) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  In Polk County v. Dodson, the Supreme Court held that public defenders appointed to represent indigent defendants in state criminal

proceedings do <u>not</u> act under color of state law. <u>Dodson</u>, 454 U.S. 312, 314, 317-19, 321-322, 324-25 (1981) (reasoning that although a public defender may be paid with state funds, he or she acts independently of the state's authority and instead exercises independent judgment in representing a criminal defendant). Accordingly, under <u>Dodson</u>, because Defendant LaCoursiere was not acting under the color of state law, as required to successfully maintain a section 1983 action against him, Plaintiff's claims against Defendant LaCoursiere in his individual capacity fail to state claims on which relief may be granted.

Based on the foregoing the Court recommends **GRANTING** Defendant LaCoursiere's Motion to Dismiss, [Docket No. 61], to the extent the motion pertains to all of the claims against Defendant LaCoursiere in his individual capacity. Because all of Plaintiff's claims against Defendant LaCoursiere fail as a matter of law at the outset, the claims should be **DISMISSED with prejudice**. <u>See</u>, <u>Davis</u>, No. CIV. 05-4016, 2005 WL 1593050, at *1.

## VIII.  DEFENDANT RINGUETTE'S MOTION TO DISMISS AND/OR SUMMARY JUDGMENT, [DOCKET NO. 84]

Defendant Ringuette moves the Court to dismiss Plaintiff's claims against her, arguing that the Court does not have subject matter jurisdiction over Plaintiff's claims against her and that, in any event, Plaintiff's Amended Complaint fails to state a claim against her for violation of a constitutional right.[16]

### A.  Subject Matter Jurisdiction

Defendant Ringuette argues, as a threshold matter, that the Court does not have subject matter jurisdiction over section 1983 claims against her as a federal employee.  Defendant Ringuette works for the National Weather Service and, as such, is a federal rather than state employee. <u>See</u>, 15 U.S.C. § 313 (listing weather forecasting as a duty of the Secretary of

---

[16] In the alternative, Defendant Ringuette argues she has qualified immunity for her actions.

Commerce); see also, Nat'l Weather Serv. Employees Org., Branch 1-18 v. Brown, 18 F.3d 986, 987 (2d Cir. 1994) (noting that the Secretary of Commerce oversees the National Weather Service). Section 1983 is inapplicable to actions against a federal employee who acted under the color of federal law. Jones v. United States, 16 F.3d 979, 981 (8th Cir. 1994) (citing Haley v. Walker, 751 F.2d 284, 285 (8th Cir. 1984)). The Eighth Circuit has held that a complaint alleging a section 1983 claim against a federal employee may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Id.

The Court notes that some courts considering *pro se* complaints have elected to construe section 1983 claims alleged against federal employees as having been brought under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which is the federal analog to suits brought against state officials under § 1983. See, e.g., Solliday v. Dir. of Bureau of Prisons, No. CIV. 11-2350 MJD/JJG, 2012 WL 3839340, at *1 (D. Minn. July 27, 2012) report and recommendation adopted, No. CIV. 11-2350 MJD/JJG, 2012 WL 3835853 (D. Minn. Sept. 4, 2012). The Court also notes that Defendant Ringuette has offered alternative arguments regarding Plaintiff's claims in the event that the Court concludes it does have jurisdiction to consider them under Bivens.

Based on the foregoing, to the extent that Plaintiff has brought her claims against Defendant Ringuette under section 1983, the Court construes those claims as having been brought under Bivens.

**B. Failure to State a Claim**

Defendant Ringuette next argues that the factual allegations in Plaintiff's Amended Complaint fail to state claims against her upon which relief may be granted. "The factors necessary to establish a Bivens violation will vary with the constitutional provision at issue."

Iqbal, 556 U.S. at 676.  At the February 11, 2015, motions hearing, Plaintiff clarified that he is alleging that Defendant Ringuette: (1) violated his rights to equal protection; (2) retaliated against him for exercising his First Amendment rights to free speech and freedom of the press; (3) violated his right to make and enforce contracts under 42 U.S.C. § 1981; and (4) violated his rights to "life, liberty, and property under the Fourteenth Amendment." (February 11, 2015, Motion Hearing, Digital Recording at 11:49 a.m.).

　　1.　Vicarious Liability

　　As before, the Court deems it necessary to first consider whether Plaintiff has alleged sufficient specific facts that would justify imposing vicarious liability on Defendant Ringuette for the actions of Picazio, her Florida associates, any of the other named Defendants, or Defendant Ringuette's superior at the NWS.  See, Parrish, 594 F.3d at 1001 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

　　Plaintiff's allegations against Defendant Ringuette fail to set forth any specific facts upon which to infer that she came to a meeting of the minds with anyone to participate in a plan to violate any of Plaintiff's asserted constitutional rights. See, Murray, 595 F.3d at 870 (holding that a conspiracy claim under section 1983 requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators).  Accordingly, Plaintiff has failed to allege any specific facts on which vicarious liability could be imposed on Defendant Ringuette for the acts of Picazio, her Florida associates, any of the other named Defendants, or Defendant Ringuette's superior at the NWS.

　　As a result, the Court addresses only the merits of Plaintiff's direct claims against Defendant Ringuette on the basis of his allegations that Defendant Ringuette delayed informing

him that he had received security clearance and made complaints about his janitorial work performance at NWS to his employer, Five Star.

2.   Official Capacity Claims

To the extent that Plaintiff has alleged claims against Defendant Ringuette in her official capacity, Plaintiff is alleging claims against the United States. See, Elder-Keep, 460 F.3d at 986. "It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity." Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998) (citing Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982)).

Based on the foregoing, the Court recommends **GRANTING** Defendant Ringuette's Motion to Dismiss, [Docket No. 84], to the extent the motion pertains to the claims against her in her official capacity. Because Plaintiff's claims against Defendant Ringuette in her official capacity fail as a matter of law at the outset, the Court recommends that the claims be **DISMISSED with prejudice**. See, Davis, No. CIV. 05-4016, 2005 WL 1593050, at *1.

3.   Retaliation

In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983,

> [Plaintiff] must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

Spencer, 738 F.3d at 911.

Plaintiff argues that his operation of a website constituted protected First Amendment activity and that Defendant Ringuette's mention of that website to his employer, Five Star, warrants the inference that her actions were motivated by his operation of the website. Even assuming that Plaintiff's allegations regarding those assertions in support of a First Amendment

retaliation claim are correct, Plaintiff's allegations in his Amended Complaint fail to allege that he suffered any adverse action at all by receiving delayed notification that he had been granted security clearance or having Defendant Ringuette complain about his work performance to his employer.[17] Accordingly, Plaintiff's allegations fail to state a First Amendment retaliation claim against Defendant Ringuette.

### 4.  Right to Contract under 42 U.S.C. § 1981

To successfully allege a claim of interference with the right to contract under 42 U.S.C. § 1981, Plaintiff must allege: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." Gregory v. Dillard's, Inc., 565 F.3d 464, 469 (8th Cir. 2009).

Plaintiff fails to allege any specific facts to indicate that he is a member of a protected class or that Defendant Ringuette acted with discriminatory intent.[18] Accordingly, Plaintiff's claim that Defendant Ringuette violated his right to contract under 42 U.S.C. § 1981 also fails to state a claim on which relief may be granted.

### 5.  "Life, Liberty, and Property"

Plaintiff next asserts in a merely conclusory manner unsupported by any specific facts that Defendant Ringuette's actions violated his rights to "life, liberty, and property." Construed in the light most favorable to him, Plaintiff's allegations that Defendant Ringuette violated his

---

[17] Plaintiff's specific factual allegations in his Amended Complaint indicate that it was Defendant Ringuette's supervisor and not Defendant Ringuette herself that made the call that resulted in the termination of Plaintiff's employment. As discussed above, Plaintiff cannot ground a claim against Defendant Ringuette on the acts of her superior. See, Wood v. Moss, 134 S. Ct. 2056 (2014) ("[I]ndividual government officials 'cannot be held liable' in a Bivens suit 'unless they themselves acted [unconstitutionally].'" (quoting Iqbal, 556 U.S., at 683)).

[18] At most, Plaintiff's claims against Defendant Ringuette amount to a state law claim of tortious interference with contract. See, Metge v. Cent. Neighborhood Improvement Ass'n, 649 N.W.2d 488, 500 (Minn. Ct. App. 2002) (setting forth the elements of a Minnesota tortious interference with contract claim). A state law tort claim cannot form the basis of a Bivens action. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Bivens] claim is to identify the specific constitutional right allegedly infringed.").

rights to "life, liberty, and property" by making complaints that led to Plaintiff losing his employment might arguably be an attempt to assert a claim that Defendant Ringuette violated his rights to due process under the Fifth Amendment. See, U.S. Const. Amend. 5; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (noting that Due Process clause applies to claims that a defendant violated a plaintiff's constitutional property right to continued employment); see also, Newsome v. E.E.O.C., 301 F.3d 227, 232 (5th Cir. 2002) ("[T]the Fourteenth Amendment applies only to state actors, not federal actors."  (citing Bolling v. Sharpe, 347 U.S. 497, 499 (1954)).

However, Plaintiff has alleged his due process claim in a conclusory manner unsupported by any specific factual allegations. Conclusory allegations unsupported by specific facts are insufficient to state a claim upon which relief may be granted. Twombly, 550 U.S. at 555. Accordingly, Plaintiff's allegations that Defendant Ringuette violated his rights to "life, liberty, and property" fail to state a claim on which relief may be granted.

6.  Equal Protection.

Finally, Plaintiff asserts that Defendant Ringuette's actions violated his rights to equal protection. Once more, as discussed above, Plaintiff does not assert that he is a member of protected class and, as such, can only be construed to be alleging a "class of one" equal protection claim. To allege a "class of one" equal protection claim, a plaintiff must allege sufficient facts to show: 1) that the state actor intentionally treated the plaintiff differently than others who are similarly situated to the plaintiff; and 2) there was no rational basis for the differential treatment.  Barstad, 420 F.3d at 884.

Plaintiff's specific factual allegations fail to allege the existence of any other individuals who were similarly situated to Plaintiff.  Accordingly, Plaintiff fails to state an equal protection claim against Defendant Ringuette.

Based on the foregoing, the Court recommends **GRANTING** Defendant Ringuette's Motion to Dismiss, [Docket No. 84], to the extent the motion pertains to all of the claims against Defendant Ringuette in her individual capacity.  Because Plaintiff's claims against Defendant Ringuette in her individual capacity fail as a matter of law at the outset, the Court recommends that the claims be **DISMISSED with prejudice**. See, Davis, No. CIV. 05-4016, 2005 WL 1593050, at *1.

## IX.    PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF, [Docket No.72]

Plaintiff moves the Court to enjoin Defendant City from collecting personal and demographic information from him as part of an annual recertification for the housing assistance that he receives, and to enjoin Defendant City from making any adverse changes to the amount of housing assistance Plaintiff currently receives.

### A.  Facts

On November 4, 2014, the East Grand Forks EDHA, through which Plaintiff receives housing assistance, notified Plaintiff that it needed to conduct an annual income review appointment with him and asked him to complete an Annual Recertification Application Form with information regarding his income, the ages of his children, and his childcare costs.  (Pl.'s Motion for Injunctive Relief, [Docket No. 73], 11-19).

Plaintiff thereafter filed the present Motion for Injunctive Relief, [Docket No. 72].

## B. Standard of Review

"A preliminary injunction is an extraordinary remedy . . . and the burden of establishing the propriety of an injunction is on the movant." Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).  The purpose of issuing a preliminary injunction in a lawsuit is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (citing Dataphase Sys., Inc., v. C L Sys., Inc., 640 F.2d 109, 113 & n. 5 (8th Cir. 1981) (en banc). "Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Id. (citing Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975)). A motion seeking a preliminary injunction that is based on claims that are entirely different from the claims raised and the relief requested in the lawsuit does nothing to preserve the court's decision-making power over the merits of the lawsuit. Id. As such, claims asserted in a motion for a preliminary injunction that are entirely different from the claims raised or relief sought in a lawsuit cannot form the basis of a preliminary injunction in that lawsuit. Id.

## C. Analysis

Plaintiff asks the Court to enjoin the EDHA from obtaining his financial and demographic information and making any adverse changes to the level of housing assistance he receives from Defendant City, contending that Defendant City is likely to misuse any information he provides.[19] However, Plaintiff acknowledged at the motion hearing that the EDHA's request for information is solely for the purpose of recertifying Plaintiff's eligibility for

---

[19]Plaintiff also argues that he has received an order from the state courts of Minnesota declaring his financial information confidential and prohibiting its disclosure.  A review of the records Plaintiff submitted indicate that the order to which Plaintiff refers is a protective order entered in an unrelated child support matter that prohibited disclosure of Plaintiff's financial information by the mother of one of Plaintiff's children.

housing assistance and that Plaintiff has provided the EDHA with such information in the past. (December 17, 2014, Motions Hearing, Digital Recording at 1:01 p.m.). Plaintiff's housing assistance is not an issue in the present case.  As such, Plaintiff has failed to demonstrate that either the disclosure of personal information that he asks the court to enjoin or the maintenance of the level of housing assistance he currently receives will in any way affect the Court's decision-making authority over the claims now at issue before this Court.

Because Plaintiff has failed to meet his burden of demonstrating that the injunction he seeks will preserve the Court's decision-making authority over the claims at issue in the present case, the Court recommends **DENYING** Plaintiff's Motion for Preliminary Injunction, [Docket No. 72].

## IV.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The City Defendants' Motion to Dismiss and/or for Summary Judgment [Docket No. 13], be **GRANTED** as set forth above;

2. The County Defendants' Motion to Dismiss [Docket No. 23], be **GRANTED** as set forth above;

3. Defendant Galstad's Motion to Dismiss [Docket No. 32], be **DENIED** as moot;

4. Defendant Galstad's Amended Motion to Dismiss and/or for Summary Judgment, [Docket No. 54], be **GRANTED**, as set forth above;

5. Defendant LaCoursiere's Motion to Dismiss [Docket No. 61], be **GRANTED** as set forth above;

6. Defendant Ringuette's Motion to Dismiss and/or for Summary Judgment, [Docket No. 84], be **GRANTED** as set forth above; and,

7. Plaintiff's Motion for Injunctive Relief [Docket No. 72], be **DENIED** as set forth above.

Dated: March 9, 2015                                    **s/ Leo I. Brisbois**
                                                         Leo I. Brisbois
                                                         U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 23, 2015** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by April 6, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.